UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):             Attorneys Present for Defendant(s):

Not Present                                     Not Present

**Proceedings:** (In Chambers) Order GRANTING Motion to Dismiss

Before the Court is Defendant's motion to dismiss the First Amended Complaint ("FAC") with prejudice. The Court heard oral argument on the motion on August 6, 2012. Having read and considered the moving and opposing papers and the arguments made at the hearing, the motion to dismiss is GRANTED.

I.   Background

Plaintiff Robert P. Mosier, in his capacity as the permanent receiver for the PEMGroup entities ("PEMGroup" or the "Receivership Estate"), brings this action for rescission, declaratory relief, negligence, and unjust enrichment against Phoenix Life Insurance Company and PHL Variable Insurance Company (collectively, "Phoenix"). In essence, the Receiver argues he is entitled to rescind two Stranger Originated Life Insurance ("STOLI") policies because Pheonix has refused to confirm that it will provide coverage under the policies when they become due. According to the Receiver, Phoenix's "long history of attempting to avoid its obligations under insurance policies that were sold to investors" and refusal "to confirm that it will honor the Policies" has caused consideration to fail, entitling the receiver to rescission under California Civil Code Section 1689(b) and the return of some $4,800,000 in premium payments made to date.

Phoenix issued the two relevant life insurance policies in 2005. *See* FAC ¶ 10. One policy insures the life of Karl F. Gengler (the "Gengler Policy"), and the other insures the life of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

Jaren E. Hiller (the "Hiller Policy") (collectively, the "Policies"). *Id.* Both Gengler and Hiller were Wisconsin residents at the time the policies were taken out, and the policies were applied for and issued in Wisconsin. The Gengler and Hiller Policies have death benefits of $5,000,000 and $6,000,000 respectively, and were originally issued to Heritage Christian School, a religious-affiliated school located in Wisconsin to whom Gengler and Hiller had donated their insurability. *Id.* ¶¶ 10, 21; *Mot.*, Exs. A, B.[1]

It is undisputed that Messrs. Hiller and Gengler are still living, and thus Phoenix's obligations under the Policies have not yet become due. Nonetheless, the Receiver requested that Phoenix verify in writing that it would honor its contractual obligations under the Policies when they matured. Phoenix refused to complete the form submitted by the Receiver. *See* FAC ¶ 27; *Mot.*, Exs. C, D. Despite declining to confirm that it will honor the policies, Phoenix also refuses to return the premiums it has collected to date. *Id.* ¶ 29. According to the Receiver, Phoenix's refusal to confirm that the policies are valid amounts to a failure to provide "coverage" under the Policies, resulting in a failure of consideration and leaving PEMGroup and the Receivership with worthless life insurance policies. *Id.* ¶ 30.

Notably absent from the FAC, however, is any allegation that Phoenix has actually stated that it will refuse coverage under the policies, or that Phoenix was under any duty – "contractual, statutory, legal, or equitable" – to execute the form or provide confirmation of coverage. *See*

---

[1] Defendant seeks judicial notice of redacted copies of the Hiller and Gengler Policies and the Verification of Validity and Enforceability of Life Insurance Policy forms submitted to Phoenix, attached as Exhibits A through D to Defendant's motion. "[W]hile a court must generally refrain from considering extrinsic evidence in decided a 12(b)(6) motion, it may consider documents on which the complaint 'necessarily relies,'" provided their authenticity is not in dispute. *See Warren v. Fox Family World wide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (citations omitted); *accord Amcal Gen. Contractors, Inc. v. Ace Am. Ins. Co.*, No. CV 09-06134 DDP RCx, 2009 WL 3398355, at *7 (C.D. Cal. Oct. 20, 2009). The FAC contains myriad allegations relating to the contents of the Policies, and the Receiver does not question the accuracy or authenticity of the redacted copies attached as Exs. A and B to Defendant's motion. Likewise, Phoenix's refusal to complete the forms attached as Exs. C and D form the basis of the Receiver's purported entitlement to rescission. The Receiver also does not contest their accuracy. Accordingly, the Court takes judicial notice of Exs. A through D to Defendant's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

*Mot.* 13:1-13. In the absence of any obligation to either confirm or deny that it would honor the policies before they became due, Phoenix argues that the FAC pleads no basis entitling the Receiver to rescission of the Policies and disgorgement of the millions of dollars in premium payments Phoenix collected in exchange for carrying an $11 million insurance risk on its books for the past seven years. *See Mot.* 6:17-22. Accordingly, Phoenix filed the present motion to dismiss, seeking dismissal of all claims with prejudice. *See* Dkt. # 23.

II. Choice of Law

The Parties dispute whether Wisconsin or California law applies, accordingly, the Court must engage in a choice of law analysis. The applicability of Wisconsin law is potentially significant, in that under Wisconsin law, unlike in California, an insurance policy lacking an insurable interest, as the Receiver originally alleged in the Complaint, is not invalid and void *ab initio*. *Compare* WIS. STAT. ANN. § 631.07(4) ("No insurance policy is invalid merely because the policyholder lacks insurable interest or because consent has not been given, but a court with appropriate jurisdiction may order the proceeds to be paid to someone other than the person to whom the policy is designated to be payable...."), *with Jimenez v. Protectice Life Ins. Co.*, 8 Cal. App. 4th 528, 536, Cal. Rptr. 2d 326, 330 (1992) (noting that a policy lacking an insurable interest is void *ab initio* under California law). If Phoenix challenged the policies as void *ab initio* under California law, the Receiver might be entitled to rescission and return of all premiums paid. However, under Wisconsin law, the lack of an insurable interest would not void the policies; it would simply give rise to competing claims to the policy's death benefits as between the current beneficiary, *i.e.*, the Receiver, and "someone...who is equitably entitled thereto...." *See* WIS. STAT. ANN. § 631.07(4)

The moving papers on the conflict of law issue, and the Receiver's opposition in general, are disappointing and deficient. California has generally adopted the Restatement (Second) of Conflict of Laws ("Restatement"). *See Nedloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992). The Restatement sets forth special choice of law rules applicable in the life insurance context. *See* 2 Witkin, Summary of Cal. Law (10th), Insurance § 25. Under the Restatement approach, in the absence of an effective choice of law by the parties, the law of the state where the insured is domiciled at the time the policy is applied for usually determines the validity of a life insurance contract and the rights created under it. *Id.* at § 26 (citing Restatement (Second) of Conflict of Laws § 192). It is undisputed that the insurance policies do

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

not contain a choice of law provision, and that the insureds were Wisconsin residents at the time the Policies were issued.

However, the comments to the applicable Restatement provision make clear that the "rule of [§ 192] applies to life insurance contracts that have been issued to the insured upon his application. The rule does not apply to life insurance issued upon the life of someone other than the applicant; as to such insurance, no more definite rule can be stated, in the absence of an effective choice of law by the parties, than that stated in § 188." Restatement (Second) of Conflict of Laws § 192, cmt. a. Section 188 merely sets forth the "governmental interest test" applicable to the determination of a conflict of law in the absence of a choice of law provision, which California has adopted. *See Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916, 15 P.3d 1071 (2001).

Under the governmental interest analysis, California courts engage in a three-step process to determine whether a foreign state's law governs an issue in an action brought in California. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994-94 (9th Cir. 2010) (discussing *Wash. Mut. Bank*, 103 Cal. Rptr. 2d 320, 15 P.3d at 1080-81). The California Supreme Court has summarized the process:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state[,]" and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

*Id.* at 995 (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 45 Cal. Rptr. 3d 730 (2006). "The party advocating the application of a foreign state's law bears the burden of identifying the conflict between that state's law and California's law on the issue, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

establishing that the foreign state has an interest in having its law applied. If it fails to meet either of these burdens, the court 'may properly find California law applicable without proceeding to the third step in the analysis.'" *Id.* (quoting *Wash. Mut. Bank*, 103 Cal. Rptr. 2d at 320).

    Neither party tailors its choice of law argument towards meeting this standard. Rather, in its opening brief, Phoenix argues only that the "Receiver, however, fails to explain how or why California law applies to life insurance policies that were issued in the state of Wisconsin and insure the lives of Wisconsin residents[.] Simply put, Wisconsin law, not California law, applies to the rescission of the Policies." *Mot.* 8:16-20. In opposition, the Receiver argues, incredibly, that the fact that the "Policies were issued in Wisconsin and insure the lives of Wisconsin residents…is irrelevant." *See Opp.* 5:11-15. He then confusedly argues that "[e]ven if there were a choice of law provision in the Polices (which there is not)," the standard for enforcing such a provision would not be met. *See Opp.* 5:19-6:7. But as it is undisputed the Policies do not contain a contractual choice of law provision, this entire analysis is irrelevant. And while the Receiver does finally identify the "governmental interest test" applicable in the absence of a choice of law provision, *see Opp.* 6:8-7:7, he makes no effort to analyze whether this test applies to the life insurance policies at issue in this case in light of § 192, Comment a., or any other authority particular to the life insurance context, and his analysis with respect to its outcome on the facts of this case is limited to pointing out that "Phoenix has completely failed to satisfy its burden, and accordingly, California law must apply in this case." While the Receiver is ultimately correct that the burden rests with Phoenix to demonstrate the applicability of Wisconsin law, *see Pokorny v. Quixtar, Inc.*, 601 F.3d at 995, this is but one example of a deficiency plaguing the entirety of the Receiver's opposition brief, which, although thick on summary, unsupported legal conclusions and finger-pointing, is disappointingly lean on citation to *any* legal authority supporting the viability of its causes of action.

    Nonetheless, the Court agrees that Phoenix has not met its burden of demonstrating that Wisconsin law applies on the present motion. In reply, Phoenix does attempt to show that the governmental interest test favors application of Wisconsin law; however, in so doing it effectively concedes that the two states' laws on rescission and negligence are not in conflict. And although Phoenix points out that the states' "insurance laws stand in stark contrast" with respect to the effect of a determination that an insurance policy lacks insurable interest, given that neither the Receiver nor Phoenix has yet asserted that the Policies lack an insurable interest, it is not clear that this distinction is material at this stage. Moreover, the Court is conscious of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

the fact that arguments made for the first time in reply ordinarily are not considered unless the party opposing the motion has an opportunity to respond. *See Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756, at *6 (C.D. Cal. Sept. 25, 2006). Accordingly, the Court concludes that Phoenix has not met its burden on the present motion and will analyze the viability of Plaintiff's claims under California law. Should Phoenix again wish to demonstrate that Wisconsin, rather than California law applies, Phoenix may renew its arguments under the proper standard and in the proper format required by the Local Rules.

III.   Legal Standard on Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint under Rule 12(b)(6), the courts must be mindful that the Federal Rules of Civil Procedure require that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the U.S. Supreme Court has instructed that "a complaint that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

In resolving a Rule 12(b)(6) motion, the Court must first accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. In determining whether the alleged facts cross the threshold from the possible to the plausible, the Court is required "to draw on its judicial experience and common sense." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

IV.   Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

Phoenix objects to Plaintiff's rescission as improper and to the entire action as unripe on the grounds it was under no duty to confirm that it would provide coverage under the policies or execute the form as requested by the Receiver. Federal Courts are constitutionally restricted to hearing "cases and controversies." "[T]he appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). More specifically, "[t]he 'central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-1123 (9th Cir. 2010) (citing *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997)); *cf. Robinson*, 394 F.3d at 672 (finding suit for declaratory judgment of proper contract interpretation ripe because both parties positions with respect to the dispute had been clear for twenty years and had been memorialized in an amendment, the uncertainty had already interfered with one attempt to sell a party's interest under the policies, and nothing in the parties memorialization agreement suggested that the parties did not intent to resolve the dispute until the contract term was up, or "*that waiting until then would change anything*") (emphasis added).

As noted, the insureds are still living; therefore, no death benefit is due under the Policies. Nor has Phoenix affirmatively asserted that the Policies are void or voidable, or that Phoenix will seek to void the Policies at some point in the future or refuse to pay the benefits when they become due. Moreover, Phoenix's obligation to pay the death benefits is contingent on the Receiver's continued performance of the insurance contracts by timely paying the premiums. In sum, Phoenix's obligations are not yet due, may never become due if the Receiver decides to stop paying the premiums, and, in the event the Policies do mature, Phoenix may decide to pay them. Therefore, a failure of consideration based on non-payment of benefits clearly involves contingent and uncertain future events which may never come to fruition, or may not occur as expected, and therefore is not ripe for adjudication.

Acknowledging this problem, the Receiver attempts to parse the consideration it was to receive in exchange for the premium payments into two distinct benefits: (1) insurance benefits, *i.e.*, payment of the benefits when the Policies mature, and (2) insurance *coverage*, which the Receiver defines as *knowing* that the benefits will be paid. The Receiver asserts, without citation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

to legal or contractual authority, that certainty of coverage is a hallmark of all life insurance policies. Because Phoenix's failure to execute the confirmation of coverage form has caused the Receiver to suffer uncertainty regarding whether coverage exists, this aspect of consideration supposedly has failed.

But the relationship between the Receiver and Phoenix is governed by contract, namely, the Policies themselves. *See Stein v. International Ins. Co.*, 217 Cal. App. 3d 609, 614, 266 Cal. Rptr. 72 (1990). "An insurance policy is fundamentally a contract between the insurer and the insured." *Id.* As such, the Policies are "subject to the same general principles of interpretation as any other contract." *See AIU Ins. Co. v. Sup. Ct. (FMC Corp.)*, 51 Cal. 3d 807, 821-22, 274 Cal.Rptr. 820 (1990). Phoenix is correct that, in California, "[t]he parol evidence rule prohibits the use of extrinsic evidence to contradict or supplement a contract where the contract is intended to be a final expression of that agreement and a complete and exclusive statement of the terms. If the contract purports to be a complete and final expression of the agreement on its face, then extrinsic evidence is excluded." *Willig v. Exiqon, Inc.*, SACV 11-399 DOC RND, 2012 WL 1375, at *5 (C.D. Cal. Jan 3, 2012). The Receiver does not argue that the Policies are not complete and final expressions of the parties' agreement, and the Policies recite that they are. *See Mot.*, Ex. A, p. 36 ("This policy…constitute[s] the entire contract between you and us"); *accord*, Ex. B, p. 83. Therefore, to prove that Phoenix's failure to verify the Policies' validity caused consideration to fail, the Receiver must direct the Court to a provision within the Policies or to some aspect of California law obligating Phoenix to prospectively confirm coverage.

The Receiver makes no attempt to satisfy this standard by reference to the Policies or any legal authority whatsoever. Rather, the Receiver simply complains, without support, that "given Phoenix's history of misconduct and its reputation in the industry, the Receiver was well within the scope of his appointment to request confirmation from Phoenix in order to evaluate the assets of the Receivership Estate and decide whether he should keep paying premiums." But the mere fact that it was within the scope of the Receiver's authority to request confirmation from Phoenix does not establish that Phoenix was under a legal or contractual duty to respond.

In sum, the Court concludes that in so far as the Receiver's claims are based on the assertion the Phoenix plans to deny coverage under the Policies if and when they become due, absent an unequivocal statement by Phoenix to this effect, such allegations are not ripe for review. In so far as the Receiver asserts that a partial or complete failure of consideration now exists due to the Receiver's refusal to prospectively confirm coverage, the Receiver has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

provided a factual or legal basis for this conclusory assertion, and it cannot withstand the present motion to dismiss. With this in mind, the Court turns to an evaluation of the individual causes of action to determine whether any, stripped of these two assertions, states a claim upon which relief may be granted.

    A.    <u>Rescission</u>

The Receiver brings a cause of action for rescission under California Civil Code section 1689(b), which provides that "[a] party to a contract may rescind the contract" under certain enumerated circumstances. While the FAC did not identify the subpart(s) of section 1689(b) under which the Receiver intended to proceed, the Receiver clarified in opposition that it intends to seek rescission under the following subparts:

> (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
>
> (2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.
>
> (3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.
>
> (4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.
>
> ....
>
> (6) If the public interest will be prejudiced by permitting the contract to stand.

*Opp.* 8:1-15; Cal. Civ. Code § 1689(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

The Receiver's allegations in support of subparts (2), (3), (4), and (6) all boil down to Phoenix's refusal to execute the form and thereby confirm coverage under the policies. As discussed *supra*, the Receiver has not demonstrated that this constitutes a failure of consideration or otherwise entitles the Receiver to rescind the Policies under California law. And while rescission under subparts (3) and (6) might be warranted should it be determined that the Policies lack an insurable interest, the Receiver has made clear that "the FAC makes no allegations regarding the insurable interest of the Policies." *See Opp.* 13:14-16. Accordingly, the FAC fails to state a claim for rescission under these subparts.

As for the Receiver's request for rescission under subpart (b)(1), the Receiver asserts that Phoenix should have known that the entities who applied for the Policies, in whose shoes PEMGroup and the Receiver stand, made material misrepresentations in their application and intended to engage in a STOLI scheme. Phoenix "knew or should have known that it would not honor its obligations under the Policies in all required circumstances," yet Phoenix failed to take "appropriate measures in response to this knowledge," and proceeded to issue the Policies. *See Opp.* 8:17-28. As a result, "PEMGroup was duped into purchasing and assuming the rights and obligations under the Policies based on Phoenix's connivance." *See id.* 9:2-4.

The Receiver fails to articulate a factual basis explaining how it was "duped" by *Phoenix* into purchasing the Policies from HCS on the secondary market. The Receiver has not identified a representation by Phoenix that led to its decision to purchase the Policies beyond the language in the Policies themselves, and there is no allegation that Phoenix has failed to live up to those standards. Moreover, there is no allegation that PEMGroup was mistaken with regard to any of the facts underlying the transaction; namely, that the Policies issued to HCS on the lives of Messrs. Hiller and Gengler might be STOLI policies that might be void and/or voidable under applicable law. The policies themselves condition payment of benefits on the policy being "In Force" at the time of the insured's death. *See* FAC ¶ 38. If PEMGroup paid sticker price for these policies despite the inherent risks that they might be void *ab initio* or subject to challenge under applicable law, and therefore made a bad deal, the FAC pleads no facts from which the Court could conclude that this was due to Phoenix's misconduct. Indeed, there is no allegation that Phoenix was involved in, or was even aware of, the transaction between HCS and PEMGroup, and the only direct interaction between Phoenix and the Receiver pleaded in the FAC relates to the submission of the request for confirmation of coverage form. The Court agrees that the Receiver may not bootstrap allegations that PEMGroup was duped into entering

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

into the separate agreement to purchase the Policies from HCS as a justification for rescinding the original Policies.

With respect to the origination of the Policies themselves, the Receiver argues that PEMGroup stands in the shoes of the previous owners, "so it does have the right to rescind." *See Mot.* 10:2-3. However, the Receiver cites to no legal authority supporting the ability of the original purchasers to sue for rescission under the circumstances of this case. First, the Receiver has not and cannot allege that the consent of the party seeking rescission, *i.e.*, the original purchasers, was obtained by mistake. *See* Cal. Civ. Code § 1689(b)(1). Far from being mistaken as to the facts underlying the transaction, they are alleged to have made misrepresentations to obtain issuance of the Policies, and the basis for Phoenix's liability is that it was or should have been aware of these misrepresentations. Section 1689(b)(1) therefore appears inapposite, and, as noted, the Receiver points to no authority supporting its applicability in this context.

Further, the Court finds persuasive the reasoning announced by the Sixth Circuit holding that equitable considerations did not support suits for rescission initiated by the party who has fraudulently procured the policies in the first place. *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 796-97 (6th Cir. 2009). In *Wuliger*, the Court considered a Receiver's ability to bring a suit for rescission of three insurance policies fraudulently procured by the Receivership entities. As here, the Receiver sought return of the premiums paid by the Receivership entities before they allowed the policies to lapse. *See id.* at 792. Relevant to this case, the Sixth Circuit noted that, *inter alia*, equitable principles relating to unclean hands barred the Receiver's – as opposed to the insurer's – suit for rescission:

> The Receiver's proposed rule—that an insured who commits insurance fraud may announce the fraud and receive a refund on any premiums paid to date—would have the perverse effect of reducing the defrauders' risk relative to honest policyholders; any defrauder could commit to paying premiums on his fraudulently procured policy knowing that if the premiums ever became unaffordable, he could declare his fraud and receive all of the previously paid premiums back.

*Id.* at 796-97.

The same concerns are implicated here. Phoenix has not stated it will not honor the policies, nor has it sought rescission. Rather, the insureds appear to have simply lived longer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

than PEMGroup, and by extension, the Receiver, would have liked. Obviously, the longer the Receiver is required to make payments to maintain the Policies, the less profitable the investment becomes with respect to the total payout. But equity does not support placing one who has fraudulently procured a policy in a better position than an honest insured by permitting that party to declare a rescission at their option when an insured fails to die in a timely and profitable manner. Absent identification of a contrary rule in California, or *any* authority supporting the availability of a suit for rescission on these facts, the Receiver has not shown it is entitled to rescind the Policies, and this cause of action is DISMISSED.

B. <u>Negligence</u>

Phoenix argues the Receiver's negligence claim requires dismissal because the Receiver has not established that Phoenix owed it a duty. The Court agrees. Under California law, a negligence claim "requires plaintiff to allege that defendant owed [plaintiff] a legal duty, breached the duty, and that the breach was a proximate or legal cuase of [plaintiff's] injury." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1223 (C.D. Cal. 2010) (internal citations and quotation marks omitted).

Here, the FAC contains only conclusory allegations that Phoenix had "statutory and common law duties to use a reasonable degree of skill and care in conducting its business, which includes issuing life insurance policies," and that these duties were owed "to the parties to whom it issued life insurance policies, as well as the secondary market purchasers who Phoenix undeniably knew would acquire these policies." *See* FAC ¶¶ 56, 59. Phoenix apparently breached these duties by "issuing the Policies despite its knowledge that it would not honor, or not confirm its intentions to honor, the Policies, and ignoring and/or failing to investigate the parties applying for and obtaining interests to the Policies." *Id.* at ¶ 59.

However, as noted at length, the Receiver can point to no statement by Phoenix that it will not honor the Policies, nor any obligation on the part of Phoenix to "confirm its intentions to honor" the policies. The allegation that Phoenix failed to investigate the parties applying for (HCS) and obtaining interests in (PEMGroup) the Policies also fails, because these are the entities in whose shoes the Receiver is standing, and Phoenix was under no obligation to protect these entities from themselves. Further, the FAC does not allege that there is anything wrong with the Policies, that the Policies are void or voidable, or otherwise show that the Receiver has been damaged by Phoenix's issuance of the Policies to HCS. Indeed, the Receiver has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#23

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

confirmed in opposition that "the FAC makes no allegations regarding the insurable interest of the Policies." *See Opp.* 13:14-16. Rather, the Receiver's allegations with respect to damages are based on the already-rejected theory that Phoenix's refusal to confirm it would pay benefits "destroyed the underlying coverage the Policies are intended to provide." *Opp.* 18:1-7.

As with each of his other causes of action, the Receiver fails to cite to any authority that a cause of action for negligence may be maintained and is ripe for adjudication on these facts under California law. Rather, the Receiver baldly asserts that he has "alleged that Phoenix owed [a] duty to the secondary market purchasers who Phoenix undeniably knew would acquire these policies" and that he has "clearly pled (sic) that Phoenix owes legal duties, through multiple channels, to both PEMGroup and the Receiver." But the existence of a duty is a legal question, and the Receiver's allegations, which are the definition of legal conclusions couched as factual assertions, are insufficient to withstand a motion to dismiss. Accordingly, this cause of action is DISMISSED.

C.   Declaratory Relief and Unjust Enrichment

For the same reasons already enunciated in connection with the Receiver's causes of action for rescission and negligence, the Receiver's remaining "causes of action" for declaratory relief and unjust enrichment also require dismissal. First, declaratory relief and unjust enrichment are forms of relief; they are not freestanding causes of action. *See Progeny Ventures, Inc. v. Western Union Financial*, 752 F.Supp.2d 1127, 1135 (C.D. Cal. 2010). Moreover, the facts underlying these causes of action are the same as those pleaded in support of the Receiver's cause of action for rescission under California Civil Code Section 1689, which has been dismissed. The Receiver clarified in opposition that both arise from Phoenix's refusal to execute the confirmation of coverage form, which the Court has already determined is non-actionable. Absent a valid basis for rescinding the Policies, the Receiver is not entitled to a declaration that the Policies are void. *Id.* (noting that because declaratory relief is a form of relief, it was viable "only to the extent Plaintiff's claim for breach of contract warrants such relief." And because the cause of action for breach of contract had been dismissed, "it follow[ed] that Plaintiff also fails to establish a basis for declaratory relief."). Further, because Phoenix has not unequivocally stated that it will not honor the policies, which have not yet become due, the Receiver cannot yet establish that Phoenix has been unjustly enriched by collecting the premiums in exchange for carrying the insurance risk. In sum, because the Receiver has not identified any underlying cause of action for which declaratory relief and unjust

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#23**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-227 PSG (Ex) | Date | August 7, 2012 |
|---|---|---|---|
| Title | Robert P. Mosier, *et al.* v. Phoenix Life Insurance Co., *et al.* | | |

enrichment would be an appropriate remedy, these causes of action do not state a claim for which relief may be granted and are DISMISSED.

V.      Conclusion

There is no allegation that Phoenix has failed to perform any obligation due under the Policies. Phoenix has not itself rescinded the Policies or unequivocally stated that it will not pay benefits upon the deaths of the insureds, and the Receiver has not identified a contractual or statutory duty to confirm coverage as requested by the Receiver. Accordingly, the FAC fails to articulate a basis for seeking rescission of the Policies. The Receiver has also failed to establish that Phoenix owed a duty of care to the Receiver, that any such duty was breached, and that Phoenix's "breach" – which again hinges on its refusal to confirm coverage – resulted in cognizable damages under the procedural posture of this case. Finally, the facts underlying the Receiver's "causes of action" for declaratory relief and unjust enrichment are the same as those giving rise to the Receiver's rescission claims, and therefore fail for the same reasons and because they are forms of relief, rather than freestanding causes of action. In sum, the Court GRANTS Defendant's motion to dismiss in its entirety WITH LEAVE TO AMEND. The Receiver may file a Second Amended Complaint not later than **August 27, 2012**.

**IT IS SO ORDERED.**