Nancy Sher Cohen (SBN 081706)
ncohen@proskauer.com
Lary Alan Rappaport (SBN 087614)
lrappaport@proskauer.com
Joshua J. Pollack (SBN 215922)
jpollack@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067-3206
Telephone:    (310) 557-2900
Facsimile:    (310) 557-2193

John Failla (admitted *pro hac vice*)
jfailla@proskauer.com
Elise Yablonski (admitted *pro hac vice*)
eyablonski@proskauer.com
Nathan Lander (admitted *pro hac vice*)
nlander@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone:    (212) 969-3000
Facsimile:    (212) 969-2900

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as successor in interest to CHRISTIANA BANK & TRUST COMPANY, as trustee for JOHN DOE TRUST 1, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>PHL VARIABLE INSURANCE COMPANY, PHOENIX LIFE INSURANCE COMPANY, and THE PHOENIX COMPANIES, INC.<br><br>Defendants. | Case No. CV12-04926-SVW (AJWx)<br><br>**PLAINTIFFS' OBJECTION AND RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date Argued and Taken Under Submission: December 3, 2012 |

Plaintiffs hereby object and respond to Defendants' Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss the First Amended Complaint (the "Supplemental Authority") (D.I. 70).

1

Plaintiffs object to the Supplemental Authority on the ground that it has been submitted as a pretext for Defendants to attempt to reargue their meritless motion to dismiss the First Amended Complaint, which motion was extensively briefed, argued on December 3, 2012 and taken under submission by the Court.

The Supplemental Authority also should be rejected under the doctrine of judicial estoppel, which prevents parties from seeking to take legal positions in subsequent proceedings inconsistent with those taken in earlier ones. *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1122 (C.D. Cal. 2007) (quoting 18 James Wm. Moore, *Moore's Federal Practice* § 134.30 at 134-63 to 134-64 (3rd ed. 2006) ("Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process.  It is to be applied where intentional self-contradiction is being used as a means of obtaining unfair advantage.")

The Supplemental Authority focuses on a January 15, 2013 decision by the Hon. Philip S. Gutierrez in *Mosier v. Phoenix Life Ins. Co. & PHL Variable Ins. Co.*, No. CV 12-227 ("*Mosier*"), a case which Defendants previously described to Judge Gutierrez as having "nothing in common" with this action "[o]ther than generally relating to the same basic subject matter (life insurance policies)."[1] Having successfully persuaded Judge Gutierrez that this action has "nothing in common" with the *Mosier* case, Defendants are precluded from taking a contrary position before this Court.  Defendants may not reverse their earlier position and argue that Judge Gutierrez's decision in *Mosier* is controlling here because the two actions purportedly involve similar facts and legal issues.

Defendants' latest position also is wrong.   As Defendants told Judge Gutierrez, "[t]he only thing the cases have in common is that both involve insurance

---

[1] Defendants' statements regarding the dissimilarity of this action and *Mosier* are contained in Defendants' July 19, 2012 Response in Opposition to the Notice of Related Case filed by the *Mosier* plaintiffs.  A true and correct copy of Defendants' July 19, 2012 Response is attached and marked as Exhibit 1.  The quoted text appears at page 2, lines 21 – 22.

PLAINTIFFS' OBJECTION AND RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL
AUTHORITY INFURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

policies, and both name Phoenix Life Insurance Company and PHL Variable Insurance Company . . . as defendants."[2]  (Exhibit 1 at p. 1, ll. 13 – 15.)

In *Mosier*, a policyholder sought *to rescind* two policies issued by PHL when PHL declined the policyholder's request for confirmation that PHL ultimately would pay benefits when the insureds died.  In his January 15, 2013 decision, Judge Gutierrez found there was no ripe controversy because the insureds were alive and plaintiffs had not alleged that PHL already had decided to deny future claims.

By contrast, Plaintiffs do not seek to rescind the 60 life insurance policies they own, but instead seek compensatory, treble and punitive damages for Defendants' RICO violations, fraud and breach of contract and relief for Defendants' unfair business practices.  Unlike the rescission claim in *Mosier*, these counts, and Plaintiffs' declaratory relief claim, do *not* claim that PHL must confirm whether it ultimately will honor a policy at the whim of a policyholder.  Rather, Plaintiffs allege that Defendants *already have made a business decision not to honor the policies and to deny claims when submitted, yet continue to represent to Plaintiffs that the policies are valid and continue to bill and collect premiums*. Plaintiffs further allege that Defendants have breached the policies by impermissibly increasing cost of insurance charges in violation of the contractual terms.

*Mosier* also is inapplicable to this action because, as extensively discussed in Plaintiffs' opposition to the motion to dismiss, Plaintiffs' claims here *are* ripe.  The plaintiffs in *Mosier* did not allege that the defendant insurers had committed tortious acts or breached the policies or that they had suffered harm as a result of wrongful acts by the insurers.  Rather, the *Mosier* plaintiffs sought to rescind the two policies because the insurers would not verify that they eventually would pay benefits if the plaintiff policy owners continued to pay premiums.  That distinguishes *Mosier* from this action in several material ways.

---

[2] The Phoenix Companies, Inc. is named as a defendant in this action but not in *Mosier*.

3

1   First, the First Amended Complaint ("FAC") alleges that Plaintiffs *already*

2   *have suffered* damages as a result of Defendants' RICO violations, fraud, breach of

3   contract and statutory violations.

4   Second, Plaintiffs allege that Defendants already have made a business

5   decision not to honor the policies and to deny claims when submitted, yet continue

6   to represent to Plaintiffs that the policies are valid and continue to bill and collect

7   premiums. (*See, e.g.*, FAC at ¶ 273.) For example, the FAC alleges:

8   •   Defendants already have decided not pay death benefits where, as here, the

9       beneficial interest in a trust owning the policy was transferred. (*See, e.g.*,

10      FAC at ¶¶ 7, 13, 14, 94, 104–106, 112, 115–116, 121, 123, 125, 194, 197,

11      199, 233, 244, 257, 263 and 273.)

12  •   PHL has implemented a practice of denying coverage under all policies

13      where, as here, the beneficial interest in the trust has been transferred. (FAC

14      at ¶¶ 96 and 97.)

15  •   PHL already has sought to rescind five policies owned by trusts with the

16      same trustee as Plaintiffs (including policies owned by three Plaintiffs) and

17      written by the same agents who wrote the policies. (FAC at ¶¶ 7, 104 and

18      105.)

19  By contrast, the *Mosier* policyholders did not allege the insurers already had

20  decided not to honor the policies or sued to void other policies owned by the same

21  parties or written by the same agents. Judge Gutierrez expressly found, "there is no

22  allegation that Phoenix has formerly contested policies owned by PEMGroup."[3]

23  (*Mosier,* at p. 11).

24

25

26  [3] This caused Judge Gutierrez to find *CSSEL Bare Trust v. Phoenix Life Ins. Co.*,
    2011 WL 2941357 (N.Y. Sup. Ct. June 23, 2011) – a case in which Defendants had,

27  like here, already challenged other policies owned by the same trustee –
    inapplicable. (*Mosier* Order at 11: "[t]he facts before CSSEL provided a much

28  stronger basis for finding ripeness.")

4

1    Third, Plaintiffs seek to enforce, rather than avoid, the policies and allege
2    facts showing that they have suffered harm.   Plaintiffs allege their policies are
3    enforceable and want the ability to sell the policies in the marketplace for full value.
4    As the Supreme Court explained more than a century ago, being unable to sell a life
5    insurance policy "diminish[es] appreciably the value of the contract in the owner's
6    hands." *Grigsby v. Russell*, 222 U.S. 149, 156 (1911).   Because of the uncertainty
7    created by PHL's actions, buyers will not purchase the policies at all or will only
8    pay minimal consideration.   This is precisely the harm – which was absent in *Mosier*
9    where the plaintiffs sued to rescind their policies– the Ninth Circuit has recognized
10   as creating a ripe controversy.   *See also Village of Euclid v. Ambler Realty Co.*, 272
11   U.S. 365, 386 (1926) (finding justiciable controversy because a town ordinance
12   "operate[d] greatly to reduce the value of appellee's land and destroy their
13   marketability.").

14       Fourth, in their discussion of *Mosier*, Defendants conveniently fail to mention
15   key recent events that conclusively demonstrate the existence of a ripe controversy.
16   Two of the insureds (John Doe 31 and John Doe 51) *have died*, and the Plaintiff
17   trusts (John Doe Trust 31 and John Doe Trust 51) submitted the requisite death
18   certificates and Beneficiary Statements to PHL.   Consistent with Defendants' plan
19   not to honor the policies and to deny claims when made, Defendants have (just as
20   Plaintiffs alleged was their plan) committed *additional* breaches of contract by: (i)
21   improperly demanding that each Doe Trust complete and return a Certification and
22   Acknowledgement of Trust Agreement ("Trust Certification Form") in violation of
23   the policy terms and, (ii) failing and refusing to pay the $6,000,000 and $4,000,000
24   death benefits owed to John Doe Trust 31 and John Doe Trust 51, respectively.

25       John Doe 51 died on September 30, 2012.   The policy PHL issued to John
26   Doe Trust 51, like the others at issue, requires PHL to pay the $4,000,000 owed
27   under the policy to the beneficiary (John Doe Trust 51) "upon receipt of due proof
28   of death of the Insured."   On November 1, 2012, John Doe Trust 51 provided PHL

5

1    with John Doe 51's "due proof" of his death (the death certificate), returned the

2    policy to PHL, and completed a "Beneficiary Statement," providing PHL with

3    information regarding where to pay the $4,000,000 death benefit.

4         In breach of the policy terms, PHL notified John Doe Trust 51 on November

5    2, 2012 that it would *not* pay the claim unless John Doe Trust 51 completed a

6    document which is *not* required by the policy terms: a Trust Certification Form

7    requesting information regarding John Doe Trust 51 such as whether and when any

8    transfers of the beneficial interest in John Doe Trust 51 had been made.   Thus,

9    Defendants responded to the John Doe Trust 51 death claim precisely as Plaintiffs

10   alleged in the FAC Defendants planned to do.  (*See* FAC at ¶¶ 99-101).

11        In an effort to receive the $4,000,000 owed to it, despite PHL's willful breach

12   of the policy, John Doe Trust 51 complied with PHL's unlawful demand, completed

13   a Trust Certification Form and provided it to both PHL and Defendants' counsel on

14   December 12, 2012.  The form indicated that a transfer of the beneficial interest in

15   John Doe Trust 51 had occurred.

16        As Plaintiffs also alleged Defendants planned to do, after receipt of the Trust

17   Certification Form, PHL has refused to pay John Doe Trust 51's claim.

18        John Doe 31, the person who formed John Doe Trust 31 and whose life was

19   insured by the policy PHL issued to John Doe Trust 31, died on December 4, 2012.

20   The policy issued to John Doe Trust 31 requires PHL to pay a $6,000,000 benefit to

21   John Doe Trust 31 as beneficiary upon due proof of death.

22        On January 10, 2013, John Doe Trust 31 provided PHL with a death

23   certificate, the policy, and a "Beneficiary Statement," providing information

24   regarding where the claim should be paid.   Here, too, PHL breached the contract by

25   refusing to pay John Doe Trust 31's claim absent completion of a Trust Certification

26   Form not required under the terms of the policy.

27        Although not required to do so under the policy, John Doe Trust 31 provided

28   both PHL and Defendants' counsel with a completed Trust Certification Form by

6

1    overnight mail on February 1, 2013.  PHL has failed and refused to comply with its

2    contractual obligation to pay the $6,000.000 death benefit.

3         Accordingly, for the reasons stated in Plaintiffs' opposition and above,

4    Plaintiffs respectfully submit that the motion to dismiss should be denied in its

5    entirety.

6

7    DATED: February 5, 2013                    NANCY SHER COHEN
                                                LARY ALAN RAPPAPORT
8                                               JOSHUA POLLACK
                                                PROSKAUER ROSE LLP
9

10                                                        /s/
                                                _____
                                                    Lary Alan Rappaport
11
                                                Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1   KENNETH G. PARKER (SBN 182911)
      kenneth.parker@haynesboone.com
2   WILLIAM O'NEILL (SBN 251071)
      william.oneill@haynesboone.com
3   HAYNES AND BOONE, LLP
    18100 Von Karman Ave., Suite 750
4   Irvine, California 92612
    Telephone:   (949) 202-3000
5   Facsimile:   (949) 202-3154

6

7   THOMAS F. A. HETHERINGTON (Texas Bar No. 24007359)*
    E-Mail: tom.hetherington@emhllp.com
8   JARRETT E. GANER (Texas Bar No. 24055570)*
    E-Mail: jarrett.ganer@emhllp.com
9   EDISON, McDOWELL & HETHERINGTON LLP
    3200 Southwest Freeway, Suite 2100
10  Houston, Texas 77027
    Telephone:   (713) 337-5580
11  Facsimile:   (713) 337-8850
    *pro hac vice applications pending

12  Attorneys for Defendants
    PHOENIX LIFE INSURANCE COMPANY
13  AND PHL VARIABLE INSURANCE COMPANY

14

15                  **UNITED STATES DISTRICT COURT**

16                  **CENTRAL DISTRICT OF CALIFORNIA**

17

18  ROBERT P. MOSIER,  Receiver for         Case No. SACV12- 227 PSG (Ex)
    PRIVATE EQUITY MANAGEMENT
19  GROUP, LLC, AND PRIVATE                 **RESPONSE IN OPPOSITION TO**
    EQUITY MANAGEMENT GROUP,                **NOTICE OF RELATED CASES**
20  INC.,
                                            DATE:    [NO HEARING PENDING]
21            Plaintiff,                    TIME:    [NO HEARING PENDING]
                                            CTRM:    880-Roybal
22  v.

23  PHOENIX LIFE INSURANCE                  District Judge:  Philip S. Gutierrez
    COMPANY, PHL VARIABLE                   Courtroom 880
24  INSURANCE COMPANY, and DOES
    1-5, inclusive,
25
              Defendants.
26

27

28

    _____
        **RESPONSE IN OPPOSITION TO NOTICE OF RELATED CASES**

1       Plaintiff, Robert P. Mosier (the "Receiver"), Receiver for Private Equity

2  Management Group, LLC, and Private Equity Management Group, Inc.

3  (collectively the "PEM Group")[1] filed a notice of related cases with respect to

4  *Wilmington Savings Fund Society, FSB, as trustee of John & Jane Doe Trusts 1-60*

5  *v. PHL Variable Insurance Company, Phoenix Life Insurance Company, and The*

6  *Phoenix Companies, Inc.*, Case No. CV12-04926-SVW-AJWx (the "WSFS

7  Case"), a RICO case pending before the Honorable Stephen V. Wilson, which was

8  recently filed against Phoenix by a party unrelated to either the Receiver or PEM

9  Group.  The Receiver asserts that the WSFS Case is related to this case because it

10 (1) arises from the same or closely related transactions, happenings and events; (2)

11 calls for the determination of the same or substantially related questions of law and

12 fact; and (3) would likely entail substantial duplication of labor if heard by

13 different judges.  The only thing the cases have in common are that both involve

14 insurance policies, and both name Phoenix Life Insurance Company and PHL

15 Variable Insurance Company (collectively "Phoenix") as defendants.[2]

16      This case involves 2 related life insurance policies governed by Wisconsin

17 law insuring 2 Wisconsin residents, which were issued in March and November

18 2005 through the same insurance brokers, and which were originally owned by the

19 same Wisconsin private school on whose board the insureds' sat.  The Receiver

20 seeks to rescind the policies, seeks to hold Phoenix liable for negligently issuing

21

22 [1] This case was originally assigned to the Honorable Cormac J. Carney, but was
transferred to the Honorable Philip S. Gutierrez as a related case to the PEM Group

23 receivership proceedings, No. CV09-2901 PDG (Ex) (the "Receivership") pending
in this Court.  This case is clearly related to the Receivership because the fraud

24 perpetrated by PEM Group, which has already been developed in part in the
Receivership, will be highly relevant to the Receiver's ability to seek equitable

25 relief in this case.

26 [2] The WSFS Case also names The Phoenix Companies, Inc. as a defendant, which

27 is not a defendant in this case.

28

1

1   the policies, and seeks damages for unjust enrichment based on Phoenix's receipt

2   of premiums.  The gravamen of the Receiver's complaint is that Phoenix should

3   have known that the insurance brokers who submitted the insurance applications to

4   Phoenix did so as part of a stranger originated life insurance ("STOLI") scheme

5   perpetrated by PEM Group.

6         The WSFS Case, on the other hand involves 60 separate life insurance

7   policies, governed by the laws of 8 different states (none of which is Wisconsin)

8   insuring individuals residing in at least 10 states (none of which is Wisconsin),

9   issued through a variety of brokers (none of which were involved in the PEM

10   Group case) from August 2006 to May 2008.  Through a 113 page complaint, the

11   plaintiffs in the WSFS Case assert two claims for civil violations of RICO,

12   California and Connecticut statutory claims, as well as conspiracy, fraud and other

13   common law claims.  Distilling the voluminous complaint to its core, the 60

14   plaintiffs assert that Phoenix defrauded the plaintiffs into paying premiums on

15   policies that Phoenix secretly planed to later reject as void.  Although Phoenix's

16   time to respond to the Complaint has not yet occurred, Phoenix presently

17   anticipates challenging the complaint based on, among other things, failure to state

18   a claim under either RICO or the state law causes of action and improper venue

19   (three of the plaintiffs in the WSFS Case are defendants in litigation brought by

20   Phoenix in Delaware).

21         Other than generally relating to the same basic subject matter (life insurance

22   policies), these cases have nothing in common.  The PEM Group case will require

23   an examination of a discreet transaction under Wisconsin law.  The WSFS Case –

24   assuming it survives Phoenix's challenge - would require an examination of 60

25   separate insurance transactions under RICO and nearly a dozen different states'

26   laws.  There would simply be no judicially economy achieved by transferring

27   either of these cases from their respective court.

28

2

1    Moreover, to the extent the receiver is considering parroting the allegations
2  made against Phoenix in the WSFS Case and adding a RICO claim in this case, the
3  Receiver has not yet sought leave to do so.  Indeed, in response to Phoenix's
4  motion to dismiss its original complaint, the Receiver substantially altered the
5  factual basis for the relief it sought in its amended complaint.  Phoenix has moved
6  to dismiss the Receiver's amended complaint, which is set for hearing on August 6.
7    Additionally, to the extent that the PEM Group case is "related" to cases
8  involving Phoenix and implicating insurance policies and STOLI, there have been
9  several of such "related" cases in the Central District of California:
10   • *PHL Variable Insurance Co. v. Dook Soock Park 2007 Irrevocable Trust*;
11     No. 2:09-cv-08714-VBF-MAN (Hon. Valerie Baker-Fairbank presiding)
12     (filed 11/25/09)
13   • *PHL Variable Insurance Co. v. Dong Woon Cho Life Insurance Trust*; No.
14     2:09-cv-08923-VBF-MAN(Hon. Valerie Baker-Fairbank presiding)
15     (filed 12/04/09)
16   • *PHL Variable Insurance Co. v. The Joo I. Park 2007 Irrevocable Trust*;
17     2:09-cv-09450-VBF-MAN (Hon. Valerie Baker-Fairbank presiding)
18     (filed 12/24/09)
19   • *PHL Variable Insurance Co. v. Kristian Giordano et al*; 2:10-cv-02370-
20     VBF-MAN(Hon. Valerie Baker-Fairbank presiding) (filed 03/31/10)
21
22  DATED:  July 19, 2012              HAYNES AND BOONE, LLP
23
24                                 By:   /s/  William C. O'Neill
25                                       William C. O'Neill
                                         Attorneys for Defendants
26                                       PHOENIX LIFE INSURANCE
                                         COMPANY and PHL VARIABLE
27                                       INSURANCE COMPANY
28
                                       3

**RESPONSE IN OPPOSITION TO NOTICE OF RELATED CASES**

1

## CERTIFICATE OF SERVICE

2         I, the undersigned, declare that I am over the age of 18 years and not a
3  party to the within action.  I am employed in the County of Orange, State of
   California, within which county the subject service occurred.  My business address
4  is 18100 Von Karman Avenue, Suite 750, Irvine, California 92612.

5         On *July 19, 2012,* I served the following document described as:
   **RESPONSE IN OPPOSITION TO NOTICE OF RELATED CASES** on the
6  interested parties in this action, addressed as follows:

7  Edward T. Totino, Esq.
   Nick S. Pujji, Esq.
8  DLA Piper LLP (US)
   2000 Avenue of the Stars
9  Suite 400 North Tower
   Los Angeles, CA 90067
10 Telephone:  (310) 595-3000
   Facsimile:  (310) 595-3318
11 Email:      Edward.totino@dlapiper.com
                Nick.pujji@dlapiper.com

12

13 in the manner identified below:

14

15 **[XXX]**     **BY ELECTRONIC FILING.**  I caused such document(s) to be
   electronically filed and served through the United States District
16 Court's CM/ECF System for the within action.  This service complies
   with the Federal Rules of Civil Procedure and General Order 10-07.
17 The file transmission was reported as complete and a copy of the
   Court's Notice of Electronic Filing will be maintained with the
18 original document(s) in our office.

     I declare that I am employed in the offices of a member of the bar of
19 this Court at whose direction this service was made.  Executed on *July 19, 2012,* at
   Irvine, California.

20

21

22  *Kelley L. Saunders*
    Kelley L. Saunders

23

24

25

26

27

28
                                 4